Sewall, J.
(After briefly stating the action, the pleadings and the facts agreed.) If the declaration, in this case, is sufficient to charge the defendant, the pleas in bar admit a breach, and allege no excuse. It has been argued that the declaration is insufficient, because upon oyer, whereby the deed becomes part of the declaration ; it appears that the covenants are limited to the title of the Connecticut Susquehannah Company; that is, the defendant has undertaken for a conveyance of their title, such as it was, and for nothing more. “ The above is to be warranted from all claims, &c., as far as the Connecticut, &c., purchase extends, and the survey is regularly made.”
But for the defendant to say that the company were purchasers, and claimed to hold the territory, of which the tract conveyed to the plaintiff was parcel, without averring a good title or seisin in them, or averring such title or seisin in himself, deduced from their purchase and claim, is no answer to the breach alleged. The averment is only that tne title, interest, and claim, of the company, was in him; but this does not answer the alleged breach of no seisin of a good and absolute es- *274 [ * 274 ] tate. &c., because it does not appear, nor is it alleged,* that the title, or interest, or claim, of the company amounted to a seisin actual or rightful, or to a right to convey.
The principal question made in the argument was, whether the deed was void ab initio by the rules of the common law, because it purports a conveyance of land within the county of Luzerne, in the state of Pennsylvania, when the title, or claim of title, conveyed, was not derived from the commonwealth or proprietors of Pennsylvania, and had not been confirmed according to the provisions of the statute to prevent intrusions.
■The inquiry must be, whether it was void at common law, for there is no provision of the statute to render deeds void, respecting any title not derived from the commonwealth or the proprietors of Pennsylvania, or confirmed by certain special statutes respecting claimants under the Susquehannah title.
Besides, when a deed is avoided by a special provision of a statute, such provision is to be taken advantage of by pleading specially the facts upon which the statute operates; as in the cases of usury, gaming, and sheriffs’ bonds. (4)
By the common law, deeds of conveyance, or other deeds, made contrary to the provisions of a general statute, or for an unlawful consideration, or to carry into effect a contract unlawful in itself, or in consequence of any prohibitory statute, are void ab initio, and may be avoided by plea; or, on the general issue'of non est factum, the illegality may be given in evidence, to show that the writing executed by the defendant is not a deed by any legal construction or effect.
The first section of the statute of Pennsylvania, relied on for the defendant, provides a penalty against any person who shall take possession of, enter, intrude, or settle, &c. It is unnecessary to say that nothing transacted within the state of New Yorlc is within this clause, as a punishable offence. And the execution of a deed, which may lead to the commission of the crime, if the grantee should have the temerity to commit it, as in pursuing his supposed [ * 275 ] title by an entry *or intrusion, seems not to be within the clause, as being constructively unlawful, unless it appeared that the parties contemplated that unlawful purpose, and no other; and then it would fall more properly within the second section, whereby every person, who shall combine or conspire for the purpose of conveying, possessing, or settling upon, any lands within the limits aforesaid, is subjected to a penalty.
The defendant has urged his defence upon this clause.
*275 And as it respects the plaintiff, he seems not to be chargeable within the meaning of the statute, or to have done that which the statute prohibits. Other facts than are stated must be proved, before he can be said to have combined and conspired to convey a pretended title, not derived as the statute requires. If he purchased ignorant of this statute, and of the defect of the title conveyed to him, as he must be presumed to have been, the deed, as to him, and against the defendant who deceived him, is good under the statute; and supposing the deed executed within the state of New York, and that to be the only overt act provable, to substantiate any offence within the penalties of the statute, even the defendant would not be liable. And although the deed may be so far illegal as to be void, and not only an ineffectual conveyance, but also incompetent evidence of title within the state of Pennsylvania; yet there seems to be no reason to conclude that it is void as between these parties. As a conveyance, its operation is local, and determinable only where the land lies which was pretended to be conveyed by it; but respecting the consideration paid, and the personal contracts collateral to the title, for the assurance of the purchaser, this contract made in another state with a person there domiciled, and not a subject, or presumed to be conusant of the laws of Pennsylvania, is not to be considered as void ab initio; nor would it be so considered, I apprehend, if the present demand were made in the courts of that state.
In this view, and supposing the question were now to be examined within the jurisdiction of Pennsylvania, and to be determined by the laws of that state, what is there in these collateral covenants contrary to the statute produced for *the defend- [ * 276 j ant ? These are not evidence of a combination to intrude, under a pretended title, upon lands in Luzerne, or a combination in the conveyance of a pretended title in such lands, but the contrary. The consideration paid, and the personal covenants required, in the conveyance are evidence to show, on the part of the plaintiff, a title supposed to be good; and the personal security required, on his part, is therefore to be enforced against the grantor, if the title should fail.
The courts of Pennsylvania would, in this view of the case, take notice on behalf of the plaintiff, that he was not a subject of that commonwealth, a party to their legislative acts, or to be supposed conusant of them ; that he had been deceived in his purchase, in a contract made without their jurisdiction ; and that, as to the consideration paid to the defendant, and the personal covenants to be enforced against him, the contract was there complete, and depended upon no act to be done within the jurisdiction of Pennsylvania, oi contrary to the prohibitions of their statute.
*276 The maxim on which the defendant relies, Ex dolo malo non oritur actio, is in no case to be enforced for the benefit of the defendant, even against a party pari delicto. It is a maxim of general policy, by which parties in a transaction unlawful in itself, or in consequence of prohibitory statutes, are enabled to punish each other for the common good, where either must derive, from the laws they have violated, a power to enforce a contract arising ex turpi causa, or the transgression of a positive law. The maxim does not apply to a ■party who, in his actual situation, has a presumption of innocence in his favor, and where, in the nature of the transaction, and of the claim to be enforced, a case is proved remote from the prohibited transaction, although collateral to it.
The case at bar is analogous to that of Holman vs. Johnson, (5) although stronger for the plaintiff’s claim. The Dunkirk merchant in that case recovered, in England, the price of his tea, although sold - with knowledge, on his part, that the purchaser intended [ * 277 ] to smuggle it into England. * The contract, as it respected the plaintiff, was complete at Dunkirk, and the purchaser therefore liable, because, as made there, it was not an unlawful contract; although, if the payment of the price had depended upon a delivery of the tea in England, no action would have been maintainable there, either for the delivery of the tea, or for the payment of the price.
In the cases of Briggs & Al. vs. Lawrence, (6) and Clugas vs. Penaluna, (7) where, upon contracts for the purchase of brandy to be smuggled into England, the plaintiffs, who were the sellers, having knowledge of the purpose of the purchasers, and having aided it in the mode of packing the article in a manner suitable, the circumstances of an actual participation in the unlawful purpose, and that the parties were all subjects of England, and to be presumed conusant of the laws prohibiting the importation, are noticed and relied on by the Court, as the grounds of their decisions against the plaintiffs, and to discharge the defendants.
In these respects, the case at bar is stronger for the plaintiff than the case of the Dunkirk merchant, who recovered the price of the teas; for it is stated as'a fact, that he knew of the purpose of smuggling, although he did not participate in the prosecution of it, Whereas, in the case at bar, it is not stated as a fact, nor is it to be presumed, from the terms or tenor of this contract, that the plaintiff had any knowledge of the prohibitory statute now urged .against him. As a legal title or assurance, the deed was not understood to avail in any respect against the laws of Pennsylvania ; nor did the *277 covenants now in question depend upon any attempt of the plaintiff to intrude unlawfully upon the tract of land conveyed.
The case of Belden vs. Pitkin, decided in the state of New York, (8) was cited as in point for the defendant. But that decis ion proceeded upon ground not open to the present defendant. In the first place, the contract which was attempted to be enforced in that case was directly, and in'the terms of it, a combination to convey Susquehannah * lands, lands within the [ * 278 ] county of Luzerne; and the action was brought for „a share of the gain, or the sums collected by the agent in this unlawful business. The contract there was directly a violation of the statute, as contrary to the avowed purposes of it. But, further, the court seem to have considered conveyances of Susquehannah lands, under the Connecticut title or claim, as a known and undisguised fraud, every where criminal in itself, independently of the statute of Pennsylvania; and therefore the action by one partner, in a combination of fraud, against another partner, for a share of the profits, was not to be tolerated.
The case at bar is clear of every suggestion of this kind. The plaintiff was no party to any unlawful purpose, except as he was cheated and deceived to place his money in the hands of the defendant, upon a pretended title, which the latter undertook fraudulently and unlawfully to sell, against the laws of the state where he was resident at the time, and of which he was a citizen.
The defendant, besides conveying the title, covenanted for the sufficiency of it. To deny the plaintiff a remedy upon these covenants, would be to aggravate the mischief, and leave the defendant in the possession of his emolument, gained by . a fraud practised with impunity.
What has been stated of decisions in this Court upon the question is stated upon memory; and the cases are not so recollected, or so uniformly reported, as to admit of our confidence; nor can we consider these loose recollections as giving the advantages of an authority which we should be disposed to respect and adhere to.
It was said that promissory notes, given for the consideration of purchases and conveyances of Susquehannah lands, have been successfully defended against, upon the ground that the contract was unlawful by the statute cited, and was utterly void.
If there has been any decision where a boni fide endorsee of a promissory note, seasonably transferred, and for a full and valuable consideration, has been met, and answered, and * defeated of his action by a defence of this kind, it [*2791 *278 would be a case in point; because it must have proceeded upon the ground that here, and every where, a conveyance of Susquehannah lands, under the supposed Connecticut title, was in itself a fraud ; and that a note so obtained was not only without consideration, but also an unlawful contract, not to be enforced, even for the benefit of an innocent endorsee.
But we are not satisfied that any such decision has ever been made in this Court; and if we had evidence of it, we must be allowed to say that the facts stated in this case do not warrant a like decision between these parties.
Against the payee of a promissory note or bill of exchange, when he brings his action, the party charged may aver that the note or bill was given without any consideration, as an accommodation note, for which the payee gave nothing, or that the intended consideration had utterly failed. (9) But we cannot accede to the position, that this would be a good defence for the present plaintiff, in an action by the present defendant, if the consideration of this deed had not been paid in money, but secured by promissory notes. Evidence of the falsity of the title conveyed, in which the notes originated, would not have been a sufficient defence upon the effect of the Pennsylvania statute ; for the covenants area consideration, notwithstanding, on the ground of a failure of the title pretended to be conveyed.
It may be said — and the case was supposed in the argument —that a demand may be made upon the covenants of the deed, where the consideration was only secured, and never actually paid; and where the notes given for it have been, in fact, avoided by proving the failure of title, according to the supposed decisions which have been alluded to. To suggestions of that kind we answer, that evidence to that' effect, if the case has really happened in fact, whether lawfully or not, will be proper in the inquiry of damages, and competent for the defendant to give. And if he produces the notes themselves given on this purchase, arid delivers them up to [*280] be * cancelled, this may avail him to reduce the damages ; the defendant not being answerable for the consideration expressed in the deed, if, in point of fact, it was never paid, (a) *279 But it purports to have been paid; and the evidence, to reduce the damages, must be produced by the defendant. Otherwise the con sideration acknowledged by the deed to have been paid and re ceived, with lawful interest thereon, must be recovered in damages, with such other expenses as the plaintiff shall prove himself to have sustained.
Let the action be further continued for judgment, which is to be rendered on an inquiry of damages, unless the parties agree on the amount, (b)
ADDITIONAL NOTE.
[Where a deed of sale appears on the face of it void, the relative and dependent covenants are also void ; but not those which are collateral and independent. — Wadi vs. Merwin, 11 Pick. 280.—F. H.]

 5 Co. 119, Whepdale's case. —2 Wils. 341, 347. — Bull. N. P. 224

 Cowp. 341.

 3 D. & E. 454.

 4 D. & E. 466.

 2 Caines's Rep. 149.

 3 Johns. 463. — See also Peake’s L. of Evid. 219.

 [Leland vs. Stone, post, 459. — Wilkinson vs. Scott, 17 Mass. Rep 249. — Shephard vs. Little, 14 Johns. 210. — Bowen vs. Bell. 20 Johns. 338. — Hamilton vs. Ezrs. M'Guire, 3 Serg. & Rawle, 355. — Jordan vs. Cooper, Ibid. 564. — Weigley’s Admr. vs. Weir, 7 Serg. Rawle, 309. — Thallenier vs. Brinkerhoof 6 Cowen, 102. — Jackson vs. M'Chesney, 7 Cowen, 360. — Sed vide Eveleth vs. Crouch, 15 Mass. Rep. 207. — Davenport vs. Mason, 15 Mass. Rep. 85. — Steele vs. Adams, 1 Greenl. 1.— Dixon vs. Swiggetty 1 Har. & Johns. 252. — Brocket vs. Foscue, Ruffin. 54. — Rowntree vs Jacob, 2 Taunt. 141. — Bristow vs. Eastman, 1 Esp. N. P. C. 172. — Ed.]

 See Blozam vs. Withers, 3 Barn. & Cresw. 232.—5 Dow. & Ry. 82. — Ed.]f